[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 02, 2004
THOMAS K. KAHN
CLERK

_____

No. 02-15933

_____

D.C. Docket No. 02-60096-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee
Cross-Appellant,

versus

IMRAN MANDHAI,

Defendant-Appellant
Cross-Appellee.

_____

Appeals from the United States District Court for the
Southern District of Florida

_____

(July 2, 2004)

Before BIRCH, KRAVITCH and FARRIS*, Circuit Judges.

_____

* Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by
designation.

FARRIS, Circuit Judge:

Imran Mandhai appeals the 140-month sentence imposed following his guilty plea to conspiring to destroy buildings affecting interstate commerce by means of fire or explosives. Mandhai contends that the district court erred in imposing the terrorism enhancement of U.S.S.G. § 3A.1.4 (2001) and the role enhancement of U.S.S.G. § 3B1.1(c) (2001). The government cross appeals the district court's decision to grant a three-level downward departure based on Mandhai's commission of an inchoate crime.

Mandhai's felony involved or was intended to promote a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5)(A) and (B). There was evidence that he was an organizer. The reason the district court gave for its downward departure was erroneous although the record reflects that this case falls outside of the Guidelines "heartland." We therefore affirm the enhancement but reverse and remand for re-sentencing with instruction to consider other reasons for a downward departure. In so doing, we do not ignore the fact that reasons were advanced and rejected in the earlier sentencing proceeding. But since the Court <u>granted</u> a downward departure, there was no reason or opportunity to advance other grounds that are available. Reasonable minds may differ over whether to consider the trial court's speculation on what might have happened to be a finding

2

of fact.  While what might have happened under different circumstances is certainly relevant in the sentencing context, it is rarely the driving force.

## Background

In November 2000, 18-year-old Imran Manda met undercover FBI operative Howard Gilbert, who was posing as "Saif Allah," a disgruntled ex-Marine who had converted to Islam and was interested in waging jihad against the United States.  After hearing Gilbert speak about his desire to train people for jihad, Mandhai began training with Gilbert.  Gilbert suggested that an effective way to harm the U.S. government was to bomb electrical substations.  Gilbert was terminated as an FBI source in early 2001.  However, despite admonishment from the FBI to cease his covert activities, Gilbert continued to meet and train with Mandhai through late March 2001.

In early March 2001, Mandhai was introduced to "Mohammed," another FBI cooperating individual who was posing as a terrorist with ties to Osama Bin Laden.  Mohammed told Mandhai that he was planning to establish a local center for training Muslims to wage jihad in Florida.  The next day, Mandhai asked Mohammed to provide financial support to his group, which was planning to bomb electrical transformers in Florida in retaliation for the U.S. government's support of Israel and other countries that oppress Muslims.  Mandhai stated that he

planned to contact the government after the attack and demand that it cease supporting countries that oppose Muslims. Mohammed agreed to help Mandhai.

On March 13, Mandhai and Gilbert took Mohammed to view two electrical substations in Florida. On the drive there, Mandhai claimed that he was in charge of the operation. After Mohammed indicated that he had ties with Bin Laden, Mandhai requested money and stated that he was concerned that Gilbert might be working for the FBI.

On March 16, Mandhai again met with Mohammed and Gilbert. During the encounter, Mandhai backtracked on his earlier claim that he was the leader of the bombing plot. Instead, Mandhai stated that the idea to bomb transformers had originated with Gilbert. He stated that he was in charge of recruiting and operations. The next day, Mandhai indicated an unwillingness to proceed with the bombing plot.

After an apparent change of heart on March 23, Mandhai requested Mohammed's help in freeing Hakki Aksoy, an associate who had been arrested on visa fraud and firearm charges, stating that Aksoy could be of assistance in their bombing plot. On March 27, Mandhai told Mohammed that he wanted to recruit 25 to 30 people to train for Jihad and asked Mohammed to acquire firearms.

On April 4, Mohammed showed Mandhai a collection of weapons and

explosive that he was willing to provide. Mandhai stated that he was suspicious of Mohammed and that he wanted out of the plot.

At a meeting held on April 19, 2002, Mandhai spoke to Mohammed and eight other individuals, including Shueyb Mossa Jokhan, in an attempt to recruit the men for jihad training. Jokhan joined the group and two days later, Mandhai, Jokhan, and Mohammed attended a gun show. There, Jokhan tried to buy a gun but was refused because his credit card was declined. On April 23, Mandhai again met with Mohammed and expressed hesitation about the bombing plot. However, after speaking with Mohammed, Mandhai stated that he was ready to proceed.

On April 24, Mandhai and Mohammed briefed Jokhan of the plan to bomb transformers. But three days later, Mandhai again wavered, expressing distrust of Mohammed. However, he agreed to proceed with the bombing plot once Aksoy was released from jail. Following this, Mohammed challenged Mandhai, questioning the seriousness of his conviction. In response, Mandhai requested bombs from Mohammed so he could complete the plan.

In May 2001, FBI agents interviewed Mandhai, who admitted he was planning to blow up electrical sites and then demand the release of Muslim prisoners and changes to the U.S. Middle East policy. A year after his interrogation, Mandhai was charged with conspiring to damage and destroy

5

electrical power stations or a National Guard Armory by means of fire and explosives under 18 U.S.C. § 844(i), (n) (Count 1), and inducing Jokhan to damage the property of an energy facility in violation of 18 U.S.C. § 1366 (Count 2). He pled guilty to Count 1 in exchange for dismissal of Count 2, and a government agreement to recommend a three-level downward adjustment for acceptance of responsibility and a sentence at the low end of the standard range.

At sentencing, the district court determined that Mandhai had an offense level of 28 and a criminal history category of VI. In reaching these figures, the court ruled that the terrorism enhancement of U.S.S.G. § 3A1.4 (2001) and the role enhancement of U.S.S.G. § 3B.1.1(c) (2001) applied, which, combined with the three level reduction for acceptance of responsibility, brought Mandhai's offense level to 31. Over the government's objection, the district court then granted a three-level downward departure because Mandhai committed an inchoate crime, which, but for the terrorism enhancement, would have allowed him to benefit from the offense level reduction for uncompleted crimes under U.S.S.G. § 2X1.1(b)(2) (2001). The court then imposed 140 months, the low end of the adjusted standard range.

## Discussion

1. Terrorism and Role Enhancements.

A challenge to the application of the Sentencing Guidelines is a mixed question of law and fact. The district court's findings of fact are reviewed for clear error while its application of the Guidelines to those facts is reviewed de novo. *United States v. Jamieson*, 202 F.3d 1293, 1295 (11th Cir. 2000). "Interpretation of the Sentencing Guidelines is similar to statutory interpretation and is subject to de novo review on appeal." *United States v. Goolsby*, 908 F.2d 861, 863 (11th Cir. 1990) (citations omitted).

If the crime of conviction "is a felony that involved, or was intended to promote, a federal crime of terrorism," U.S.S.G. § 3A1.4(a) and (b) require the court to increase the defendant's offense level by 12-levels or to 32, whichever is greater, and to increase the criminal history to Category VI. A "federal crime of terrorism" is defined as any offense that: (1) "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct"; and, (2) is one of the offenses listed in 18 U.S.C. § 2332b(g)(5)(B). 18 U.S.C. § 2332b(g)(5)(A).

The object of Mandhai's conspiracy – destroying buildings used in interstate commerce by fire or explosives under 18 U.S.C. § 844(i) – is specifically listed as a federal terrorism crime in 18 U.S.C. § 2332b(g)(5)(B). But conspiracy to do so under 18 U.S.C. § 844(n) is not. In light of this, Mandhai argues, he did

not commit a federal crime of terrorism to which the enhancement applies.

We reject the argument. We utilize traditional rules of statutory construction to interpret a guideline. *United States v. Fuentes-Rivera*, 323 F.3d 869, 872 (11th Cir. 2003). We must interpret a guideline "so that no words shall be discarded as being meaningless, redundant, or mere surplusage." *United States v. Canals-Jimenez*, 943 F.2d 1284, 1287 (11th Cir. 1991). A guideline's meaning is derived first from its plain language and, absent ambiguity, no additional inquiry is necessary. *See CBS Inc. v. PrimeTime, 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001).

Had the Guideline drafters intended that § 3A1.4 apply only where the defendant is convicted of a crime listed in 18 U.S.C. § 2332b(g)(5)(B), they would have included such limiting language. Instead, they unambiguously cast a broader net by applying the enhancement to any offense that "involved" or was "intended to promote" a terrorism crime. The term "involve" means to "include." *United States v. Graham*, 275 F.3d 490, 516 (6th Cir. 2001). The phrase "or intended to promote" in turn, must have additional meaning. *See United States v. Drury*, 344 F.3d 1089, 1099 (11th Cir. 2003)(statutes must be read so that no words are discarded as meaningless, redundant, or surplusage). In ordinary usage, to "promote" means "to bring or help to bring . . . into being . . . ." *Webster's Third*

8

*New Int'l Dictionary*, p. 1815 (1976). Under a plain reading, the phrase "intended to promote" means that if a goal or purpose was to bring or help bring into being a crime listed in 18 U.S.C. § 2332b(g)(5)(B), the terrorism enhancement applies. *Graham*, 275 F.3d at 516-18.

Mandhai argues that the district court erred in applying the terrorism enhancement to him because: 1) his conspiratorial acts were too far removed from the actual commission of a federal crime of terrorism and 2) there was insufficient evidence to prove his crime was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct" since it was speculative that he would or could follow through on the conspiracy's plan to bomb electrical substations. 18 U.S.C. §332(b)(g)(5)(A).

Contrary to Mandhai's assertion, the terrorism enhancement does not hinge upon a defendant's ability to carry out specific terrorist crimes or the degree of separation from their actual implementation. Rather, it is the defendant's purpose that is relevant, and if that purpose is to promote a terrorism crime, the enhancement is triggered. Moreover, there was substantial evidence supporting the district court's finding that the object of Mandhai's crime was to influence or affect government conduct, or to retaliate against past government action. Mandhai's goal was to bomb and disable public utilities in the hopes that power

outages would lead to civil strife and upheaval on the streets of Miami. He planned to demand the release of Muslim prisoners and changes in the government's foreign policy after the bombings. He sought weapons, money, and explosives, and he staked out targets to bomb. The record supports the district court's ruling that Mandhai intended to promote a federal crime of terrorism. The enhancement was proper even though the record reflects that Mandhai lacked both the means and the ability to carry out his defined activity without assistance that was not present.

Mandhai next challenges the imposition of the "role" enhancement of U.S.S.G. § 3B1.1(c) (2001), which required the district court to increase his offense level by two if he was an "organizer, leader, manager, or supervisor" in criminal activity. The assertion of control or influence over only one individual is sufficient to support the role enhancement. *United States v. Glover*, 179 F.3d 1300, 1302 (11th Cir. 1999). Mandhai recruited Shuyeb Jokhan into the plot, prompted him to purchase weapons, and briefed him on the bombing plan. Nothing more was required.

2. Downward Departure.

The government challenges the district court's decision to depart downward in Mandhai's offense level by three levels under U.S.S.G. § 5K2.0 (2001). We

10

review a sentencing court's application of the Sentencing Guidelines de novo to determine whether a departure from the standard range is based on a factor that: 1) advanced the objectives of federal sentencing policy; 2) was authorized under 18 U.S.C. § 3553(b); and 3) was justified by the facts of the case. 18 U.S.C. §§ 3742(e)(3) & (4) (as amended April 30, 2003); *United States v. Pressley,* 345 F.3d 1205, 1209 n. 1 (11th Cir. 2003).[1]

A court must impose a standard range sentence unless there exists a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0. The unusual circumstances must take the case outside the "heartland" of cases contemplated by the standard range. *Koon v. United States*, 518 U.S. 81, 91, 116 S. Ct. 2035, 2043, 135 L. Ed. 2d 392 (1996), *partially abrogated by* Pub.L. No. 108-21, 117 Stat. 650 (2003).

The district court found that a downward departure was warranted primarily because Mandhai committed an inchoate crime:

---

[1]Although Mandhai was sentenced before the effective date of the PROTECT's Act's changes to the standard of review, we recently held that PROTECT applies retroactively to cases pending on appeal at the time of its enactment. *See United States v. Saucedo-Patino*, 358 F.3d 790 (11th Cir. 2004).

11

I think that this crime wasn't completed and that a three-level reduction is appropriate. It would have been given had the terrorist enhancement not applied. If this would have just been scored under arson, it would have been given. And I think it's only fair that a crime that's not completed, that it be treated differently than a completed crime. And based on all the facts of this case, I overrule the Government's objection and give a three-level reduction because it's an inchoate crime.

We agree with the government that the articulated reason is not a valid basis for departing.

The terrorism enhancement imposed mandatory offense level and criminal history adjustments. Inchoate crimes were brought into the enhancement's heartland when the drafters extended it to any offense that involved or was intended to promote a federal crime of terrorism. U.S.S.G. § 3A1.4; *see also Graham*, 275 F.3d at 517. Without discussing how the particular facts of Mandhai's offense distinguished it from others in its class, the district court attempted to carve out a categorical exception to the terrorism enhancement for crimes that are not completed.

We agree with the district court, however, that the 12 level increase to Mandhai's offense level required by the terrorism enhancement prevents the penalty from fitting the crime, based on the facts of this record. The totality of the circumstances in this record, along with other factors that might not have been

12

brought to the Court's attention because he granted a downward departure, may be sufficient to remove the case from the Guidelines "heartland."

The three branches of government have distinct functions in the criminal justice system. The Legislative Branch defines the crime and prescribes penalties. The Executive Branch has absolute discretion in deciding who and what to charge. The Judicial Branch has responsibility for sentencing. There are sound reasons for this division of functions. In times of crises, a shading of responsibility can and does occasionally result in a breakdown that would be avoided if each branch accepted its role and properly discharged its constitutional obligation. For instance, the relocation of Japanese was later determined to be inappropriate on evidence that was readily available at the time of the action. *See Hirabayashi v. United States*, 828 F.2d 591, 593 (9th Cir. 1987).

In discharging the sentencing function, we properly consider all circumstances that constitute the full record, as well as the language of pertinent sentencing laws. Only two of the four known persons who participated in this conspiracy were charged. A main engine driving the conspiracy was Howard Gilbert, who was not charged even though he apparently recruited Mandhai and initially decided the goal of the conspiracy. PSI ¶ 8, 13. Further, every time Mandhai, the only teenager involved, had second thoughts, Mohammed and

13

Gilbert, both seasoned adults, kept the conspiracy on track. PSI ¶¶ 18, 14, 21, 24-26. Although it was suggested that Gilbert was not charged because he withdrew from the conspiracy, the record reflects that Mandhai also withdrew after being confronted by government agents. PSI ¶ 29, 33. There is no record of any action by Mandhai between May 2001 and his indictment a year later. We cannot and do not require the prosecutor to give reasons for his exercise of discretion to charge, but we properly consider the full record as we rule upon the appropriate sentence.

It is easy to forget that the Sentencing Guidelines are merely that–guidelines. Any attempt to remove all judicial discretion in sentencing would raise serious concerns about the separation of powers. Any sound legal basis, justified by the facts and not inconsistent with the sentencing statutes can be a proper ground for departure. The requirement is that the reasons for the departure be set forth with clarity and that it be consistent with the sentencing statute. A court that reasonably granted a downward departure, even though for a wrong reason, should be entitled to consider whether there are proper grounds for departure, especially on a record that suggests that there is.

Ours is a rule of law. We can and must keep our traditional democratic principles in place as we deal with terrorism and its threat. On this record, a sentence range of 188 to 235 months is excessive for the crime Mandhai

committed. We affirm the district court's application of the terrorism and role enhancements, reverse the downward departure imposed for the sole reason that the stated reason was improper, but remand for a new sentencing hearing, at which the district court should consider new grounds for the downward departure.

**AFFIRMED IN PART, REVERSED AND REMANDED FOR RE-SENTENCING.**

KRAVITCH, Circuit Judge, concurring in part and dissenting in part:

I concur in Part 1 of the majority opinion and agree that the district court correctly applied the terrorism enhancement to Mandhai's sentence for his conviction based on a conspiracy to destroy a building used in interstate commerce. I also agree that the district court erred by granting a downward departure under U.S.S.G. § 5K2.0 on the basis that Mandhai committed an inchoate crime. I disagree, however, that the facts take this case outside of the Sentencing Guidelines' heartland. Moreover, in my view, we lack jurisdiction to remand for the district court to consider alternative bases for a downward departure. Therefore, I respectfully dissent from the last portion of Part 2 of the majority opinion.

The majority believes this case is outside the guidelines' heartland, and, thus, a downward departure is appropriate for several reasons. These reasons include: (1) other members of the conspiracy, including the "main engine driving the conspiracy," were not charged with any crime;[1] (2) Mandhai "had second

---

[1] The fact that other members of the conspiracy were not charged with a crime is irrelevant to whether this case is outside the guidelines' heartland. As the majority recognizes, the prosecutor has discretion in deciding who to charge with a crime. The prosecutor's failure to charge Gilbert with a crime does not, and cannot, take Mandhai's case outside of the guidelines' heartland.

17

thoughts," but was kept in the conspiracy by "seasoned adults;"[2] and (3) Mandhai "withdrew after being confronted by government agents."[3] (Maj. Op. at 13.) Based on these factors, the majority concludes that the case is outside of the guidelines' heartland because "the 12 level increase to Mandhai's offense level required by the terrorism enhancement prevents the penalty from fitting the crime." (Id.) The district court, however, explicitly considered all of the factors raised by the majority, as well as many others, and refused to grant a downward departure for any of these reasons. As a result, we do not have jurisdiction to remand for the district court to consider a downward departure on the proffered bases.

A district court's refusal to grant a downward departure is ordinarily unreviewable on appeal. United States v. Ortega, 358 F.3d 1278, 1279 (11th Cir. 2003) (per curiam); United States v. Torrealba, 339 F.3d 1238, 1247 (11th Cir.

---

[2] The district court specifically found that "had the Government authorities provided Mr. Mandhai with weapons of mass destruction, . . . he would have wanted to use them, and . . . had Mr. Mandhai contacted some other terrorist instead of a Government agent, . . . a tragedy would have occurred." (Sentencing Hearing Tr. at 22.) Thus, the district court rejected the argument that Mandhai's "second thoughts" would have prevented him from committing a tragic crime. There is no suggestion that this factual finding is clearly erroneous.

[3] The mere fact that government agents were involved does not take this case outside of the guidelines' heartland. Defendants are frequently convicted and sentenced even though their convictions were made possible by the use of government agents. See, e.g., United States v. Puche, 350 F.3d 1137 (11th Cir. 2003) (affirming the conspiracy conviction of the defendant and remanding for resentencing on a basis unrelated to this case).

18

2003); United States v. Liss, 265 F.3d 1220, 1230 (11th Cir. 2001); United States

v. Rudisill, 187 F.3d 1260, 1265-66 (11th Cir. 1999).  An exception exists where

the district court believed it lacked the authority to depart.  United States v.

Brenson, 104 F.3d 1267, 1286 (11th Cir. 1997).  But, when the district court

understands its discretionary power and denies a downward departure, this court

has no jurisdiction to review the district court's denial.  United States v. Harness,

180 F.3d 1232, 1237 (11th Cir. 1999).

Here, the record shows that the district court knew it had the authority to

grant a downward departure on many bases, including those suggested by the

majority.  At the sentencing hearing, defense counsel argued that a downward

departure was appropriate because Mandhai was young, he withdrew from the

conspiracy, his intent was speculative, the government overreached in its use of

government agents, and the guidelines' sentence was excessive for the crime.[4]

(See Sentencing Hearing Tr. at 9-12.)  In response to these arguments, the district

---

[4] The factors discussed by the majority as taking this case outside the guidelines'
heartland were argued by Mandhai's counsel and were rejected by the district court.  First,
regarding Mandhai's "second thoughts," Mandhai's counsel argued: "[T]hey are in and out of
this conspiracy.  They are agreeing.  They are disagreeing.  There is nothing firm with regard to
what the ultimate outcome is going to be." (Sentencing Hearing Tr. at 10.)  Second, with regard
to Mandhai's withdrawal, Mandhai's counsel argued: "He talked about blowing some stuff up.
He drove around with them when they took the pictures.  And then he quit.  He said I am not
doing it." (Id. at 12.)  Thus, Mandhai raised the factors that the majority believes warrant a
downward departure, and the district court rejected them.

19

court stated:

> The other request for a downward departure that he is less culpable,
> that he voluntarily withdrew from the conspiracy, his age, that he was
> incapable of committing the crime, Government overreaching, and the
> other arguments, are arguments that I have the discretion either
> individually or jointly or combining them together to do a downward
> departure, but I don't think that either individually or as a composite
> that they are outside the heartland of cases, and that they would
> warrant the Court's exercising discretion, and I decline the request for
> a downward departure.

(Sentencing Hearing Tr. at 19.)[5]  Thus, the district court recognized that it had authority to grant a downward departure based on, inter alia, Mandhai's age, ambivalence about committing the crime, and the government's use of agents, but

---

[5] The majority also remands because "there was no reason or opportunity to advance other grounds [for a downward departure] that are available [under the facts of this case]." (Maj. Op. at 2.)  Given the extensive number of bases upon which Mandhai argued that a downward departure was appropriate at his sentencing hearing, it is difficult to fathom what new bases Mandhai could bring to the district court's attention on remand.  Moreover, Mandhai certainly had a reason to advance as many grounds as possible–to receive as large a downward departure as possible.  Mandhai had ample opportunity to make such arguments and, as shown above, he made them.

In addition, the majority remands this case because "a sentence range of 188 to 235 months is excessive for the crime Mandhai committed."  (Maj. Op. at 14.)  Regardless of one's view of a particular sentence imposed under a guideline, a court is required "to impose a sentence within the guideline, whether the guideline sentence sits well with it or not."  United States v. Onofre-Segarra, 126 F.3d 1308, 1311 (11th Cir. 1997).

20

specifically refused to exercise that discretion.  Because we lack jurisdiction to review that decision, I would affirm the district court's imposition of the terrorism enhancement, reverse the grant of a downward departure under U.S.S.G. § 5K2.0, and remand with instructions to impose a sentence consistent with that reversal.