[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12310

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

EDWARD VERDI-BRUNO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00347-CEH-JSS-1

_____

Before JORDAN, ROSENBAUM, and LAGOA, Circuit Judges.

PER CURIAM:

Edward Verdi-Bruno appeals his prison sentence of 262 months, within the guideline range of 262 to 327 months, after pleading guilty to trafficking fentanyl and other drugs. He contends that, in calculating his guideline range, the district court wrongly applied enhancements for possessing a dangerous weapon, U.S.S.G. §. 2D1.1(b)(1), maintaining a premises for drug manufacture or distribution, *id.* § 2D1.1(b)(12), and being an organizer or leader of the drug-trafficking operation, *id.* 3E1.1(a). He also argues that his sentence is substantively unreasonable. After careful review, we affirm Verdi-Bruno's sentence.

## I.

In February 2022, law enforcement identified a drug-trafficking organization linked with Verdi-Bruno and a car-wash business he owned in Tampa, Florida.[1] Verdi-Bruno used various "runners" to distribute quantities of fentanyl and cocaine from the business. Using confidential informants, investigators made multiple controlled buys of fentanyl and cocaine from coconspirators at the car wash between May and July 2022. The investigation also

---

[1] We derive these facts from the factual basis the government proffered during the plea colloquy, which Verdi-Bruno admitted was true, and from undisputed facts in the presentence investigation report.

determined that Verdi-Bruno traveled to Puerto Rico and shipped drugs to Tampa.

After his arrest in September 2022, Verdi-Bruno continued to direct the distribution of fentanyl through his wife and a coconspirator, Armando Arrendondo Jr., who delivered thousands of fentanyl pills to an undercover officer in October 2022. Arrendondo was arrested during a traffic stop on October 19, 2022, in possession of a loaded gun and 42 grams of fentanyl. A search of Verdi-Bruno's residence also revealed a stolen gun in a "black leather purse," as well as drugs and ammunition.

By second superseding indictment, a federal grand jury charged Verdi-Bruno with one count of conspiracy to possess with intent to distribute fentanyl, cocaine, and heroin, in violation of 21 U.S.C. § 846, and two counts of distribution and possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1). Verdi-Bruno pled guilty without the benefit of a written agreement. Based on the drug quantities charged in the indictment, Verdi-Bruno faced a mandatory minimum sentence of 10 years. *See* 21 U.S.C. § 841(b)(1)(A).

Verdi-Bruno's presentence investigation report ("PSR") recommended a guideline range of 262 to 327 months, based on a total offense level of 39 and a criminal-history category of I. In calculating the offense level, the PSR started at a base offense level of 32 based on the quantity of drugs involved. It then applied several two-level increases for possession of a dangerous weapon, U.S.S.G. § 2D1.1(b)(1); for maintaining a premises for the purpose of drug

distribution, § 2D1.1(b)(12), and for his direct involvement in the importation of drugs, § 2D1.1(b)(16)(C). Finally, it found that Verdi-Bruno should receive a four-level increase as an organizer or leader of the criminal activity, § 3B1.1(a), but also a three-level reduction for acceptance of responsibility, § 3E1.1.

Verdi-Bruno objected to the PSR. He argued that the dangerous weapon enhancement, § 2D1.1(b)(1), did not apply because the gun in his home was not found in close proximity to any drugs. He contended that controlled buys from the car wash were incidental to a legitimate use of the area, so they did not qualify for the drug-premises enhancement, § 2D1.1(b)(12). And he objected that he was not an organizer or leader, § 3B1.1(a), but instead was "selling small quantities under the direction" of a codefendant, and so would at best qualify for a two-level increase as a manager or supervisor.

The district court overruled the objections at sentencing in June 2023 after hearing testimony by the federal case agent and argument from the parties. First, the court found that the dangerous weapon enhancement, § 2D1.1(b)(1), applied based on coconspirator Arrendondo's possession of a gun on October 19, 2022. In the court's view, the evidence showed that the conspiracy continued after Verdi-Bruno's arrest, that Arrendondo was a member of the conspiracy at the time of the possession, that the firearm was possessed in furtherance of the conspiracy, and that such possession was reasonably foreseeable to Verdi-Bruno, given the nature of the drug-trafficking enterprise. The court declined to sustain the

enhancement based on the gun found in Verdi-Bruno's home, noting the lack of "evidence that the firearm in the purse was in furtherance of the conspiracy."

Next, the district court overruled the objection to the drug-premises enhancement, § 2D1.1(b)(12). Based on the testimony of the case agent, the court found that Verdi-Bruno and his coconspirators "maintained and used the premises" of his car-wash business "to store and distribute drugs." While the agent acknowledged "there was legitimate business of a car wash being run there," the court stated, he also described a "greater number of individuals arriving to the car wash on foot," which was consistent with "hand-to-hand drug sales." Looking to the "totality of the circumstances," including the evidence of multiple drug buys at the location from several members of the drug-trafficking organization, the court concluded that Verdi-Bruno maintained a premises for drug distribution.

Finally, the district court agreed with the PSR that Verdi-Bruno warranted a four-level increase as an organizer or leader of the conspiracy, § 3B1.1(a). The court found that he was the leader of the drug-trafficking organization identified in the indictment, which involved five or more participants, and that he gave instructions to the participants and directed their actions. Accordingly, the court overruled Verdi-Bruno's objections and adopted the PSR's guideline range of 262 to 327 months.

Verdi-Bruno requested the statutory minimum sentence of 10 years. Citing the dangerousness of fentanyl and Verdi-Bruno's "greed," the government sought a sentence of 275 months.

The district court imposed a total sentence of 262 months, at the low end of the guideline range. The court explained that a guideline sentence was sufficient but not greater than necessary to comply with the purposes of sentencing, and that a sentence at the low end of the range was warranted since it was Verdi-Bruno's first time in custody.

## II.

We review the district court's interpretation and application of the guidelines *de novo* and its factual findings for clear error. *also United States v. Montenegro*, 1 F.4th 940, 945 (11th Cir. 2021); *United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Barrington*, 648 F.3d 1178, 1195 (11th Cir. 2011) (quotation marks omitted). The district court may base its factual findings at sentencing on "facts admitted by the defendant's guilty plea, undisputed statements in the PS[R], or evidence presented at the sentencing hearing." *United States v. Owens*, 96 F.4th 1316, 1321 (11th Cir. 2024) (quotation marks omitted).

*A. Possession of a Dangerous Weapon*, U.S.S.G. § 2D1.1(b)(1)

A defendant convicted of drug trafficking is subject to a two-level sentencing enhancement "[i]f a dangerous weapon (including

a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The enhancement applies "whenever a firearm is possessed during conduct relevant to the offense of conviction." *United States v. Smith*, 127 F.3d 1388, 1390 (11th Cir. 1997).

This enhancement may apply when the firearm is possessed by a coconspirator. *United States v. Rodriguez*, 34 F.4th 961, 974 (11th Cir. 2022); *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006). In that circumstance, the government must prove "by a preponderance of the evidence that (1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *Pham*, 463 F.3d at 1245.

Here, Verdi-Bruno has not shown that the district court erred in applying the enhancement for possessing a firearm on the ground that his coconspirator Arrendondo possessed a gun while trafficking fentanyl. The record shows that Arrendondo participated with Verdi-Bruno in a conspiracy to traffic fentanyl, and that Arrendondo was arrested in possession of a gun and fentanyl. What's more, Verdi-Bruno does not dispute the court's findings, which we "review[] deferentially for clear error," *Rodriguez*, 34 F.4th at 974, that, at the time of possession, Arrendondo was a charged member of the conspiracy who possessed a firearm in furtherance of the ongoing conspiracy.

Instead, Verdi-Bruno contests only the element of reasonable foreseeability, arguing that there is no evidence he was aware

that Arrendondo owned or possessed a gun or that any gun was used or possessed during the drug-trafficking organization's operations. But as we explained in *Pham*, we have repeatedly "recognized that guns are a tool of the drug trade." 463 F.3d at 1246 (quotation marks omitted); *see, e.g.*, *United States v. Hromada*, 49 F.3d 685, 689 (11th Cir. 1995) ("Guns and violence go hand-in-hand with illegal drug operations."). And so "we have found it reasonably foreseeable that a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs," "even where defendants claim they were unaware of the firearm possession." *Pham*, 463 F.3d at 1246 (quotation marks omitted).

The district court did not clearly err in finding that Arrendondo's possession of a firearm was reasonably foreseeable to Verdi-Bruno. Arrendondo participated with Verdi-Bruno in a conspiracy that involved the distribution of lucrative and illegal drugs, including street-level sales of fentanyl and cocaine. We have recognized that individuals who engage in such "high risk activity" may feel "the need to protect their inventory and proceeds as well as themselves." *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005). Given the "frequent and overpowering connection between the use of firearms and narcotics traffic," *Pham*, 463 F.3d at 1246 (quotation marks omitted), the evidence before the district court "permitted a finding that the co-conspirator's possession of the weapon[] was reasonably foreseeable" to Verdi-Bruno, *Fields*, 408 F.3d at 1359. Accordingly, the court did not err in applying the § 2D1.1(b)(1) firearm enhancement.

B. *Maintenance of a Drug Premises*, U.S.S.G. § 2D1.1(b)(12)

A two-level enhancement applies when the defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). The commentary to the guideline defines a "premises" as a "building, room, or enclosure." *Id.* § 2D1.1 cmt. n.17.

"Drug manufacturing or distribution need not be the sole purpose of the premises, but must be one of the primary or principal uses for the premises, rather than use that is incidental or collateral." *United States v. George*, 872 F.3d 1197, 1205 (11th Cir. 2017) (quotation marks omitted); *see* U.S.S.G. § 2D1.1 cmt. n.17. In making that determination, the court should consider how frequently the premises was used for drug distribution purposes and how frequently it was used for lawful purposes. U.S.S.G. § 2D1.1, cmt. n.17. "Whether a defendant maintained a premises for the manufacture or distribution of drugs is a finding of fact that we review under the clear-error standard." *George*, 872 F.3d at 1205.

Here, the district court did not clearly err in finding that Verdi-Bruno maintained a premises for the manufacture or distribution of drugs. The record shows that Verdi-Bruno's car-wash establishment consisted of two temporary carports and a small office or storage closet in the side of an adjacent convenience store, behind a door labeled 906. Surveillance of the car wash showed that Verdi-Bruno's coconspirators "would go in and out" of the 906 door when dealing drugs from the car wash. Thus, the record supports the court's finding that Verdi-Bruno and his coconspirators

maintained and used a "premises"—the "room" or "enclosure" behind the 906 door—to store and distribute drugs at the car wash. *See* U.S.S.G. § 2D1.1, cmt. n.17.

Verdi-Bruno asserts that the car wash was a "legitimate business" and not a drug front. But "manufacturing or distribution need not be the sole purpose of the premises." *George*, 872 F.3d at 1205. While the federal case agent acknowledged that "[p]eople did get their cars washed at the car wash," he testified that the more frequent use of the premises was pedestrian and bicycle traffic, and hand-to-hand transactions, consistent with street-level drug trafficking. *See* U.S.S.G. § 2D1.1, cmt. n.17 (directing courts to compare the relative frequency of use for lawful purposes and drug distribution purposes, respectively). Accordingly, the district court did not clearly err in applying the drug-premises enhancement under § 2D1.1(b)(12).

## C. *Organizer or Leader Enhancement, U.S.S.G. § 3B1.1(a)*

A four-level enhancement applies where a defendant was an "organizer" or "leader" of a criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a). We consider a variety of factors in evaluating a defendant's role in the offense, *see* U.S.S.G. § 3B1.1 cmt. n.4, but there is no requirement that all the factors must be present in any one case for a defendant to be considered an organizer or leader, and more than one person may qualify as a leader. *United States v. Dixon*, 901 F.3d 1322, 1348 (11th Cir. 2018); *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009). We have affirmed the district court's application

of the four-level enhancement where "there was evidence that the defendant had recruited participants, had instructed participants, or had wielded decision-making authority." *United States v. Shabazz*, 887 F.3d 1204, 1222 (11th Cir. 2018) (quotation marks omitted).

Here, the district court did not clearly err in finding that Verdi-Bruno was an organizer or leader under § 3B1.1(a). *See Martinez*, 584 F.3d at 1025 ("We review a district court's determination that a defendant is subject to a Section 3B1.1 role enhancement as an organizer or leader for clear error."). Verdi-Bruno does not dispute that the drug-distribution conspiracy involved five or more participants. *See* U.S.S.G. § 3B1.1(a). And the record reflects that he "ran the drug trafficking" operation at the car wash, as the case agent testified. Evidence from the PSR and the sentencing hearing established that Verdi-Bruno used runners to distribute drugs, traveled to Puerto Rico to mail drugs back to the United States, and continued directing people to deliver drugs after his arrest. Thus, the evidence reflects that he was directly involved in planning and organizing the scheme, wielded decision-making authority, and exercised control and authority over others. *See Shabazz*, 887 F.3d at 1222; U.S.S.G. § 3B1.1 cmt. n.4.

Verdi-Bruno responds that he was not living a life of wealth consistent with a "large scale drug supplier." But there is no requirement that all the factors—such as "the claimed right to a larger share of the fruits of the crime," U.S.S.G. § 3B1.1 cmt. n.4— must be present in any one case. *Dixon*, 901 F.3d at 1348. And he concedes that he qualifies for at least a three-level enhancement as

a "manager or supervisor." Plus, as we've noted, more than one person may qualify as a leader. *Dixon*, 901 F.3d at 1348.

On this record, we are not left with a definite and firm conviction that the district court made a mistake in characterizing Verdi-Bruno as an organizer or leader of the drug-trafficking conspiracy. *See Martinez*, 584 F.3d at 1025.

## III.

Finally, Verdi-Bruno argues that the district court abused its discretion by failing to give sufficient weight to the 18 U.S.C. § 3553(a) sentencing factors in determining his sentence. He highlights that he had an insignificant criminal history and had never been to jail, that he pled guilty without a plea agreement, and that he expressed legitimate remorse to the probation officer and the court in his allocution. And in his view, his requested ten-year sentence would have served the purposes of sentencing and was supported by the facts of the case.

In reviewing whether a sentence is substantively reasonable, we apply a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). The party challenging the sentence bears the burden of proving that it is unreasonable based on the facts of the case and the 18 U.S.C. § 3553(a) sentencing factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

The district court must impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing. 18 U.S.C. § 3553(a). In determining the sentence, the court must consider all the factors listed in § 3553(a), but it is not required to

give all factors equal weight. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). The decision of how much weight to assign a particular sentencing factor is committed to the sound discretion of the district court. *Id.* In general, the court abuses that discretion only if it "commit[s] a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case. *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*).

Here, Verdi-Bruno fails to meet his burden to show that his 262-month sentence is substantively unreasonable. The district court concluded that a guideline range sentence was appropriate, and we ordinarily expect a guideline sentence to be reasonable. *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008). Although Verdi-Bruno lacked a criminal history, and despite his remorse, the record shows he was the leader of a drug-trafficking operation that imported and sold substantial quantities of fentanyl and cocaine. The court considered the offense conduct along with the remainder of his PSR, his sentencing memorandum, and arguments and testimony at the sentencing hearing. And it was entitled to give more weight to the severity of the offense conduct in sentencing him than to the mitigating factors he highlights on appeal. *See Rosales-Bruno*, 789 F.3d at 1254. Verdi-Bruno has not shown that the court balanced the factors unreasonably or arrived at a sentence outside the range of reasonable sentences dictated by the facts of the case. *See Irey*, 612 F.3d at 1190.

**IV.**

For the reasons stated, we affirm Verdi-Bruno's sentence.

**AFFIRMED.**