[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 19-11670

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TRINI THOMAS, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:18-cr-00032-RBD-PRL-2

_____

Before BRANCH, GRANT, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Trini Thomas appeals his 120-month sentence for conspiracy to possess with intent to distribute fifty grams or more of actual methamphetamine and one kilogram or more of heroin.  He contends that the District Court erred in (1) applying a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) and (2) failing to apply the safety valve of U.S.S.G § 5C1.2.  Because of these errors, Thomas argues, he was prejudiced by an improper calculation of the guideline range even though the District Court applied a downward variance.  After careful review, we affirm Thomas's sentence.

## I.

On July 11, 2018, the Grand Jury for the U.S. District Court for the Middle District of Florida returned a nine-count indictment charging Trini Thomas and ten others with engaging in a conspiracy to possess with intent to distribute fifty grams or more of actual methamphetamine and one kilogram or more of heroin, in violation of 21 U.S.C. § 846. Thomas was subsequently arrested in a motel room at the Sleep Inn in Leesburg, Florida, on July 12, 2018.

In October of 2018, Thomas appeared before a magistrate judge and entered a plea of guilty.  Thomas admitted to having distributed methamphetamine and heroin at the direction of co-defendant Charlie Harrison[1] from early to mid-May of 2018 through

---

[1] Harris pled guilty as well.

early July of 2018. He did so both by delivering drugs to various customers and by serving customers at a "stash house" located on Register Road in Fruitland Park, Florida. Thomas also admitted that he had possessed a key to a backyard trailer in which the methamphetamine and heroin were stored, that the key was found in his hotel room upon his arrest, and that during the execution of a federal search warrant on the stash house federal agents had found thirteen firearms in the residence. Finally, although Thomas admitted to participating in the conspiracy, he refused to cooperate against the other defendants.

Before the sentencing hearing, the probation office prepared a presentence investigation report ("PSR"). The PSR assigned a base offense level of thirty-six because the offense involved between 30,000 and 90,000 kilograms of converted drug weight, pursuant to U.S.S.G § 2D1.1(a)(5) and (c)(2). Pursuant to U.S.S.G § 2D1.1(b)(1), the PSR added two levels because thirteen firearms were found at the stash house and, pursuant to U.S.S.G § 2D1.1(b)(12), added two more levels after finding that Thomas had maintained the Register Road stash house for the purpose of manufacturing or distributing a controlled substance. In support of the latter finding, the PSR noted that Thomas had possessed a key to the drug trailer located in the backyard of the stash house. The PSR then subtracted three levels for acceptance of responsibility and assistance with the authorities, pursuant to U.S.S.G § 3E1.1(a) and (b), yielding a total offense level of thirty-seven. Thomas had only one prior conviction and therefore a criminal history score of

zero, placing him in a criminal history category of I.  His total offense level and criminal history score resulted in a guidelines range of 210 to 262 months' imprisonment, with a statutory minimum of 120 months pursuant to 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A).

Thomas made several objections to the PSR.[2]  First, he objected to the enhancement under § 2D1.1(b)(1) for possession of a firearm, arguing that he did not possess any firearms during the conspiracy, that there were no firearms in the hotel room in which he was arrested, and that he did not have a key to the stash house where the firearms were found.  Second, he objected to the two-level enhancement for maintaining a premises to manufacture a controlled substance, arguing that he did not own the stash house, he did not reside there, and possessed a key only to the trailer, not the house.[3]  Finally, Thomas argued that the PSR should have accorded him safety valve relief under U.S.S.G. § 5C1.2 because he met the criteria of that provision.[4]

---

[2] Thomas also filed a memorandum in which he argued that his personal background and employment history, including his status as the father of young children, called for a downward departure or variance from the guideline range.

[3] Thomas asserted that he had been living in a hotel for the nine months prior to his arrest.

[4] Thomas's argument for safety valve eligibility was concise:

> The Defendant is entitled to a two level reduction for "safety Valve". The Defendant is a criminal history Category one and

At his sentencing hearing, Thomas once again objected to the sentencing enhancements, making substantially the same arguments he had made when responding to the PSR. After listening to arguments from both the Government and Thomas, the District Court found that enhancements were proper both for possession of a firearm and for maintenance of premises to manufacture a controlled substance.

We make note here of two discussions that took place during the sentencing hearing. First, with respect to the District Court's finding that Thomas was subject to the premises enhancement, Thomas's counsel conceded that Thomas had lived at the stash house for several months and asked the District Court if "it [was] enough to satisfy the Court if [Thomas] was just there for a small part [of the conspiracy]?"[5]

he meets all the requirements set out in 5C1.2 sentencing guidelines. The Defendant did not possess any weapon of [sic] firearms.

[5] During the sentencing hearing, counsel for the Government stated:

I don't think there's any dispute that he was living there for a good portion of the conspiracy. He left that residence, it appears, in late June, although there was one video clip that we showed from July 1st that he was accessing the trailer.

Thomas did not dispute these facts.

6                     Opinion of the Court                    19-11670

Second, with respect to the firearm enhancement's consequences for Thomas's eligibility for safety valve relief, Thomas's counsel stated:

> The only main thing that we were going to hopefully receive here today would be some relief from the safety valve. But as an officer of the court, I'm pretty sure that the ruling you just made [with respect to the firearm enhancement], according to one of the paragraphs of the safety valve provision, would preclude him from qualifying. But I don't want to waive that objection because if for some reason the enhancement for the firearm is overturned, we do want to be able to argue later for a safety valve.

In response, the District Court stated:

> Absolutely. And you are correct. He's disqualified for the safety valve in light of my ruling on the association of the firearm with the commission of the offense. But if I'm wrong about that, he would be safety valve eligible.[6]

The District Court then adopted the factual statements and guideline calculations contained in the presentence report. The guidelines' recommendation was 210 to 262 months' imprisonment, with five years of supervised release. Thomas requested 120

---

[6] As we will discuss in more detail shortly, the District Court did in fact err on this point.

months, the statutory minimum, based on the fact that he was a first-time offender, a minor participant in the conspiracy, and involved in good works in his community.

The Government opposed Thomas's request that he receive the statutory minimum of 120 months, arguing that such a sentence was

> not enough, because a 120-month sentence for a defendant like Mr. Thomas could be imposed on the drug amount alone without the factors of the presence of firearms, without the factors of maintaining the premises for the purpose of distribution of controlled substances, which the Court found.

However, the Government did request that the Court impose a downward variance in recognition of Thomas's status as a first-time offender. A sentence somewhere in the range of 144 to 156 months, the Government argued, would be appropriate.

The Court sentenced Thomas to 120 months in prison and five years of supervised release. Thomas now appeals, arguing that the District Court erred in enhancing his sentence for maintaining a drug premises under § 2D1.1(b)(12) and by denying safety valve relief under § 5C1.2.

## II.

We review a district court's application of the guidelines *de novo* and its findings of fact supporting its application of the guidelines for clear error. *United States v. Mandhai*, 375 F.3d 1243, 1247

(11th Cir. 2004).  We may affirm for any reason supported by the record. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

## III.

### A.

Section 2D1.1(b)(12) of the Guidelines adds a two-level enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance," including "storage of a controlled substance for the purpose of distribution." U.S.S.G. § 2D1.1(b)(12) cmt. n.17. Among the factors a court should consider in determining whether § 2D1.1(b)(12) applies is "(A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1 cmt. n.17.

"Where a defendant objects to the factual basis of his sentence," the Government bears the burden of establishing the disputed fact. *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006) (per curiam) (citing *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997)). A defendant waives objections to the PSR, however, if they are not specific and clear; unobjected-to factual allegations in the PSR are admitted for sentencing purposes. *See id.* at 832–34.

Thomas argues that the District Court erred in concluding that he qualified for a two-level enhancement under § 2D1.1(b)(12)

because the Government failed to meet its burden in proving that he maintained the Register Road "stash house." More specifically, although Thomas admits the house was maintained for the principal purpose of distributing drugs, he argues that the Government failed to show Thomas *himself* maintained the stash house because it failed to show he had lived in the home when drugs were distributed.

We are not persuaded. Although Thomas's counsel stated that Thomas "did not live" at the Register Road house at the start of the sentencing hearing,[7] he did not object when the Government stated that there was not "any dispute that [Thomas] was living [at the residence] for a good portion of the conspiracy[,]" from "late April to late June." Indeed, in response to the District Court's ruling on the premises enhancement, Thomas's counsel stated that the defense disputed only "one aspect of the ruling," i.e., that "he was a resident during the time of this *entire* conspiracy." Counsel then conceded that Thomas had lived at the Register Road residence when he asked the District Court if it was "enough to satisfy the Court if he was just there for a small part?" Thomas therefore implicitly withdrew his objection to the PSR's finding that he had lived at the Register Road residence during the conspiracy and effectively admitted that fact for sentencing purposes. *See United States v. Harris*, 941 F.3d 1048, 1053 (11th Cir. 2019) (noting that a

---

[7] We note that when Thomas made this objection, he was responding specifically to the firearm enhancement, not the premises enhancement.

defendant's waived objections are effectively admitted to the re-
cited facts for sentencing purposes) (citing *Bennett*, 472 F.3d at 832–
34).

Because Thomas admitted that he lived in the residence dur-
ing a portion of the conspiracy, the District Court was entitled to
assume he had unfettered access to and control over the premises.
Notably, the fact that Thomas apparently moved out of the Regis-
ter Road residence sometime prior to the police's seizure of the
drugs and firearms does not affect our analysis. Thomas did not
need to maintain the premises for the purposes of distributing
drugs for the entire conspiracy to be eligible for a sentencing en-
hancement under § 2D1.1(b)(12); he merely needed to do so for a
portion of the conspiracy. Thus, we find that the District Court did
not clearly err in finding Thomas maintained a residence for the
primary purpose of distributing drugs.

## B.

The safety valve provision, U.S.S.G. § 5C1.2, provides for a
sentence crafted without regard to an otherwise-applicable statu-
tory minimum if the defendant meets certain criteria.[8]  U.S.S.G.

---

[8] A defendant is eligible for safety valve relief if (1) he does not have more than
one criminal history point; (2) he did not use violence or credible threats of
violence or possess a firearm or other dangerous weapon (or induce another
participant to do so) in connection with the offense; (3) the offense did not
result in death or serious bodily injury to another person; (4) the defendant
was not an organizer, leader, manager, or supervisor of others in the offense,
as determined under the sentencing guidelines and was not engaged in a

§ 5C1.2(a); *see also* 18 U.S.C. § 3553(f) (setting out the same requirements).  The defendant bears the burden of satisfying all the criteria of § 5C1.2(a) by a preponderance of the evidence.  *United States v. Carillo-Ayala*, 713 F.3d. 82, 90 (11th Cir. 2013).

Thomas argues that the District Court erred in concluding that, by virtue of receiving a two-level firearm enhancement under § 2D1.1(b)(1), he was automatically disqualified for relief under § 5C1.2.  Thomas further argues that, but for the District Court's finding on this point, he would have been eligible for safety valve relief.  Thomas is correct as to the first point, but not to the second.

The District Court *did* err when it concluded that an enhancement under § 2D1.1(b)(1) necessarily barred Thomas from safety valve relief.  As we have previously explained, "not all defendants who receive the [firearm] enhancement under § 2D1.1(b)(1) are precluded from relief under [the safety valve]." *Id.* at 91.  A defendant who receives a firearm enhancement under § 2D1.1(b)(1) can still secure safety valve relief if he shows that it is more likely than not that the possession of the firearm was not in connection with the offense.  *See id.*

---

continuing criminal enterprise, as defined in 21 U.S.C. § 848; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or a common scheme or plan.  U.S.S.G. § 5C1.2(a)(1)–(5).

The District Court's error on this point, however, did not relieve Thomas of his burden to show, by a preponderance of the evidence, that he met each of the five safety valve criteria.[9] This necessarily included showing that, "not later than the time of the sentencing hearing" he had provided truthful and complete information "concerning the offense" for which he was charged. U.S.S.G. § 5C1.2(a)(5). A review of the record makes clear that Thomas did not and could not make such a showing because, as his counsel admitted during the sentencing hearing,[10] Thomas refused to share any information regarding the drug operation with the Government, with his lawyer stating that:

> I wanted the Court to know something that's very important in this case, is that Mr. Thomas did not end

---

[9] The record shows that Thomas's counsel also incorrectly believed that a defendant who receives a firearm enhancement under § 2D1.1(b)(1) is automatically precluded from safety valve relief. Once the District Court made its ruling as to the firearm enhancement, Thomas's counsel simply folded up shop on the issue of the safety valve and presented no evidence showing why Thomas met each of the criteria under § 5C1.2. The Court's ruling as to one of the criteria for safety valve relief, however, did not relieve Thomas of his burden to show why he met each of the other four.

[10] Thomas also admitted in his sentencing memorandum that he

> did not cooperate against other Defendants due to safety concerns for himself and his family. The Defendant knew he would be going to prison and did not want to go there and have to fight the entire time, because of cooperating.

> up dealing with what's commonly known as a proffer or a substantial assistance package. And it was afforded to him . . . . He'd done everything he thought he could do as best that he could, but he did not want to talk about other people.

While § 5C1.2(a)(5) does not bar a defendant from safety valve relief if he has no information to share,[11] it is clear it requires a defendant to share what information he *does* have. Indeed, we have previously held that a drug defendant's obligation to provide full disclosure includes any "information relating to the involvement of others and to the chain of the narcotics distribution." *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997). Because Thomas chose not to provide the Government with all of the information he had concerning the drug operation and his co-conspirators, he failed to satisfy § 5C1.2(a)(5). Thus, regardless of the District Court's error, Thomas was not eligible for safety valve relief.

## IV.

For the foregoing reasons, the District Court's sentence is

---

[11] Section 5C1.2(a)(5) states that the "fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with" the requirement to provide truthful and complete information.

14                        Opinion of the Court                  19-11670

AFFIRMED.