[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-14647

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

AARON EMMANUEL WALKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cr-20923-RKA-6

_____

Before JORDAN, JILL PRYOR, and MARCUS, Circuit Judges.

PER CURIAM:

Aaron Walker appeals his convictions and sentences for access device fraud under 18 U.S.C. § 1029(a)(2) and aggravated identity theft under 18 U.S.C. § 1028A(a)(1). He raises three issues on appeal, one having to do with his guilty plea and the other two having to do with sentencing enhancements the district court imposed under the Sentencing Guidelines.

First, Walker asserts that the district court plainly erred in failing to read aloud the elements of access device fraud and aggravated identity theft at the change-of-plea hearing. The district court's failure to identify the elements, Walker contends, led him to plead guilty to offenses he did not understand, in violation of Federal Rule of Criminal Procedure 11 and his constitutional rights under the Due Process Clause. He asks us to vacate his convictions as a result.

Second, Walker challenges a factual finding the district court made at sentencing. Walker asserts that the district court clearly erred in finding that it was reasonably foreseeable to him that the joint criminal activity in which he participated involved 10 or more victims. The district court imposed a two-point offense-level enhancement under the Sentencing Guidelines based on its finding. Because of the district court's clear error, Walker argues, we must remand to the district court for resentencing.

Third, Walker argues that the district court erred in assigning him two criminal history points under the Sentencing Guidelines for a suspended sentence he received in state court. As part of that sentence, the state court gave Walker 140-days' credit for time served. In the instant case, the district court counted the 140-day time-served credit as a previous sentence of imprisonment under the guidelines, leading to the assignment of the two criminal history points. Walker argues that his time-served credit was not part of any criminal sentence; rather, it was time he spent awaiting sentencing. Given that distinction, he argues, the district court erred in counting his 140-day credit as a previous sentence of imprisonment under the guidelines.

After careful review, and with the benefit of oral argument, we conclude that the district court committed no reversible error in the three issues Walker raises on appeal. The district court's judgment is therefore affirmed.

## I.      BACKGROUND[1]

Walker and six other people conspired to use victims' personal identifying information—social security numbers and the like—to steal cell phones. The scheme worked like this: Walker or one of his co-conspirators would use a victim's social security number, address, or other information to open a line of credit with

---

[1] The facts in this section are taken from the factual proffer Walker signed and from the presentence investigation report.

Sprint.[2] Once the victim's credit was approved, Sprint would generate an "application number." Doc. 144 at 1.[3] A co-conspirator would then call Sprint's sales support number and "purport[] to be calling from a Sprint store." *Id.* The co-conspirator would provide the previously-obtained application number over the telephone and ask Sprint to open the account in Walker's name but with the social security number and/or address of the victim. Walker "would then go to a Sprint store, access the fraudulent account, and charge thousands of dollars' worth of cellular phones to the account and never pay for them." *Id.* at 2. "Law enforcement obtained transaction data from hundreds of fraudulent transactions associated with this scheme." *Id.* Walker personally obtained over $28,000 dollars' worth of cell phones using victims' personal identifying information.

A federal grand jury indicted Walker on three counts: conspiracy to commit access device fraud in violation of 18 U.S.C. § 1029(b)(2), access device fraud in violation of 18 U.S.C. § 1029(a)(2), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). The government offered Walker a plea agreement. Under the plea agreement, Walker would plead guilty to the access

---

[2] We note that "Sprint" is likely not the formal corporate name of the entity the conspirators defrauded. But because the factual proffer simply uses "Sprint" to refer to that entity, and the record reveals no conclusive identifying information, we too will refer to the entity as "Sprint."

[3] "Doc." numbers refer to the district court's docket entries.

device fraud and aggravated identity theft charges, and the government would move to dismiss the conspiracy charge at sentencing.

At a change-of-plea hearing, the district court established that Walker had some college education and was 14 credits shy of meeting the requirements for graduation with an associate's degree. The court also made sure that Walker was not under the influence of any drugs or alcohol. After confirming that Walker was of sound mind, the district court read aloud to him the access device fraud and aggravated identity theft charges. Walker testified that he understood the charges and wished to plead guilty. The district court also summarized the plea agreement and had the government summarize the factual basis for the charges by reading the factual proffer aloud. Walker testified that he understood the plea agreement and that the statements in the factual proffer were true.

The district court asked Walker about two concepts he did not immediately understand. First, the district court asked Walker if he knew that parole had been abolished in the federal system. Walker said that he was unsure of what the district court meant, and the district court recommended that he confer with his lawyer, which Walker did. After speaking with his lawyer, Walker testified that he understood. Second, the district court asked Walker if he was aware that by pleading guilty to felony offenses, he would lose some civil rights. Walker again conferred with his lawyer, and after that conversation, he testified that he understood. After ensuring that Walker was aware of all the consequences flowing from his

guilty plea, the district court found Walker fully competent to enter a knowing and voluntary plea, and it accepted his plea of guilty.

Following the change-of-plea hearing, the United States Probation Office prepared a presentence investigation report ("PSR") to aid the district court in sentencing Walker. The PSR contained details about Walker's offense and about his background. Paragraph 8 in the PSR indicated as follows:

> [F]rom February of 2017 through July of 2018, Acosta, Arauz, Sampson, Benavides, Rojas, Walker[,] and Mata agreed with each other . . . to use one or more unauthorized access devices . . . to purchase merchandise valued at over $1,000 from Sprint retail stores. The merchandise totaled $717,186.15. The victims' personal identifying information (PII) used in this fraudulent scheme included the addresses and Social Security Administration numbers of *at least 18 individuals*.

Doc. 192 at 6 ¶ 8 (emphasis added). Other paragraphs in the PSR indicated that Walker had multiple co-conspirators, all of whom were individually responsible for tens of thousands of dollars of stolen merchandise due to their individual actions. The PSR assigned Walker a two-level increase to his base offense level because the offense involved 10 or more victims. *See* U.S. Sent'g Guidelines Manual § 2B1.1(b)(2)(A)(i) (U.S. Sent'g Comm'n 2018). Walker objected to the two-point enhancement.

The PSR also contained information about Walker's criminal history. The PSR noted that Walker was arrested in Florida for aggravated stalking and that the state court sentenced him to community control and probation. Walker violated the conditions of his community-control sentence twice, and the state court modified his sentence after each violation. Following the second violation, the state court modified Walker's sentence to a suspended sentence of 3.5 years' imprisonment with time-served credit for the 140 days Walker had already spent in jail.[4] The PSR assigned Walker two criminal history points based on the 140 days, concluding that those days in jail constituted a "prior sentence of imprisonment of at least sixty days" under the Sentencing Guidelines. *Id.* § 4A1.1(b). Walker objected to this two-point enhancement as well.

At sentencing, the district court overruled Walker's objections. For the offense-level enhancement, the district court noted that "Walker himself engaged in defrauding seven victims" and that it was reasonably foreseeable to him that one of his co-conspirators defrauded at least three more. Doc. 259 at 45–46. The district court specifically referenced Walker's concession that he

---

[4] A suspended sentence is a sentence of imprisonment the defendant may never have to serve if he does not violate the condition of the suspended sentence that triggers the term of imprisonment. Although the record is not entirely clear, it appears that the remainder of Walker's suspended sentence of 3.5 years' imprisonment would have been triggered if he had violated the conditions of his community control again.

conspired with Anthony Acosta, the leader of the scheme, to de-fraud victims. The court noted that it was reasonably foreseeable to Walker that Acosta, the leader of the conspiracy, would have defrauded at least three additional individuals.

For the criminal-history enhancement, the district court ob-served that the 140 days Walker spent in jail "was computed and taken into account" when the state court imposed the 3.5-year sus-pended sentence. Doc. 259 at 60–61. That is, if Walker ever trig-gered the suspended sentence, the 3.5-years' imprisonment would be reduced by 140 days. And so, the district court reasoned, the 140 days were part of that suspended sentence and thus became a prior sentence of imprisonment for guidelines purposes.

The district court calculated that Walker had a criminal his-tory category of III and a total offense level of 10. Walker's result-ing sentencing range was 10–16 months' imprisonment for the ac-cess device fraud conviction under 18 U.S.C. § 1029(a)(2). For the aggravated identity theft conviction, a two-year consecutive sen-tence was required by statute. *See* 18 U.S.C. § 1028A(a)(1). The dis-trict court imposed 10 months' imprisonment for the access device fraud charge and 24 months' imprisonment for the aggravated identity theft charge, to be served consecutively. Taken together, Walker was committed to the custody of the Federal Bureau of Prisons for a total of 34 months, to be followed by a three-year term

19-14647              Opinion of the Court                9

of supervised release. Walker is now serving the supervised release portion of his sentence.[5]

This is Walker's appeal.

## II.    LEGAL STANDARDS

When a defendant raises an issue for the first time on appeal, we review the issue for plain error. Under plain-error review, the appellant bears the burden of establishing that (1) an error has occurred; (2) the error was plain; (3) the error affected the appellant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Moore*, 22 F.4th 1258, 1264–65 (11th Cir. 2022). The error "must be so clearly established and obvious that it should not have been permitted by the trial court even absent the defendant's timely assistance in detecting it." *Id.* at 1266 (internal quotation marks omitted).

---

[5] The fact that Walker is currently on supervised release does not moot his challenge to the district court's Sentencing Guidelines calculations. *See United States v. Huang*, 977 F.2d 540, 542 n.1 (11th Cir. 1992) (concluding that a sentencing appeal was not mooted when a defendant was on supervised release because "a lesser sentence on remand" would push back "the beginning date for the term of supervised release"); *see also Dawson v. Scott*, 50 F.3d 884, 886 n.2 (11th Cir. 1995) ("Dawson is still serving his term of supervised release, which is part of his sentence and involves some restrictions upon his liberty. Because success for Dawson could alter the supervised release portion of his sentence, his appeal is not moot.").

On review of the district court's application of the Sentencing Guidelines, we review factual findings for clear error and the court's application of the guidelines themselves *de novo*. *United States v. Thomas*, 32 F.4th 1073, 1077 (11th Cir. 2022).

## III.    DISCUSSION

Our discussion proceeds in three parts. First, we assess whether the district court plainly erred in failing to read the elements of access device fraud and aggravated identity theft to Walker during the change-of-plea hearing. Second, we determine whether the district court clearly erred in finding that it was reasonably foreseeable to Walker that the criminal scheme in which he participated involved 10 or more victims. Third, we ask whether the district court erred in assigning Walker two criminal history points for his suspended sentence.

### A.    The District Court Did Not Plainly Err by Failing to Read the Elements of the Offenses Aloud to Walker.

Walker first argues that his convictions must be vacated because the district court failed to read the elements of access device fraud and aggravated identity theft aloud at the change-of-plea hearing. Because of the district court's failure, Walker argues, he did not understand the nature of the offenses to which he was pleading guilty. Walker concedes that he did not raise this argument to the district court. We thus review the issue for plain error.

"Because a guilty plea involves the relinquishment of several constitutional rights and privileges, it must be entered voluntarily

and knowingly." *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018). To ensure the defendant enters a plea voluntarily and knowingly, Federal Rule of Criminal Procedure 11 requires the district court to inform the defendant of "the nature of each charge to which [he] is pleading." Fed. R. Crim. P. 11(b)(1)(G).[6] Although the district court must ensure that the defendant is informed of the nature of the charges, "Rule 11 does not specify that a district court must list the elements of an offense." *Presendieu*, 880 F.3d at 1238. Rather, we must undertake a case-by-case inquiry, looking at the totality of the circumstances and what they show about whether the defendant was adequately informed. *Id.*

We are confident here that the district court conducted a sufficiently robust colloquy to ensure that Walker understood the nature of the offenses to which he pled guilty. "In simple cases, . . . the district court may only need to read the indictment and afford the defendant an opportunity to ask questions" to ensure that the defendant understands the offenses charged. *Id.* at 1239. Here, the district court read the indictment aloud to Walker and afforded him an opportunity to ask questions. It also asked whether Walker understood that the government would have to prove "each and every element of each and every count contained

---

[6] Although Walker invokes the Constitution's Due Process Clause in addition to Federal Rule of Criminal Procedure 11, we analyze his challenge only under Rule 11. This is because Rule 11 sets out "the constitutional minimum requirements for a knowing and voluntary plea." *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991).

in the indictment," although it did not explicitly explain the elements to him. Doc. 258 at 16. We have no reason to conclude, under plain error review, that this case was sufficiently complex to require anything more. To the contrary, we have previously observed that aggravated identity theft—one of the crimes to which Walker pled guilty—is not a crime of extreme complexity requiring district courts to read its elements aloud at plea hearings. *See Presendieu*, 880 F.3d at 1240.

Other circumstances lead us to the conclusion that there was no error, much less plain error here. We have said that "a factual proffer may set forth in such detail the facts of the crime that it effectively incorporates the substance of the elements of the offense." *Id.* at 1239. The factual proffer—which Walker signed and affirmed—indicated that Walker used victims' personal identifying information, without authorization, to steal thousands of dollars' worth of cell phones, all in a manner affecting interstate commerce. Those details, and others in the factual proffer, largely map onto the elements of both access device fraud and aggravated identity theft.[7]

---

[7] To convict a defendant of aggravated identity theft, the government must prove that the defendant: (1) knowingly possessed, transferred, or used; (2) another person's means of identification; (3) without lawful authority; (4) during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c). *See* 18 U.S.C. § 1028A(a)(1).

We may also consider Walker's "intelligence and sophistica-tion" in asking whether he understood the offenses to which he was pleading guilty. *Id.* at 1238. Walker testified that he was 14 credits shy of graduating with an associate's degree from college. In addition to his partial college education, Walker demonstrated a willingness to confer with his lawyer about concepts discussed at the hearing that he did not immediately understand. At no point during the colloquy did Walker indicate he had trouble under-standing the offenses with which he was charged. And although the district court did not identify for Walker the elements of the of-fenses, it asked him whether he was aware that the government would have to prove the elements of the crimes charged, and Walker said he understood that. We find no reversible error in the district court's colloquy. Walker's challenge on this point therefore fails.

B.    The District Court Did Not Clearly Err in Finding It Reasonably Foreseeable to Walker that the Offense Involved 10 or More Victims.

Walker next argues that the district court clearly erred in holding him accountable for 10 or more victims. The Sentencing Guidelines provide for a two-point offense level enhancement "[i]f

---

For the crime of access device fraud, the government must prove that the defendant (1) knowingly used or trafficked in one or more unauthorized access devices; (2) with intent to defraud; (3) to obtain anything having an ag-gregate value of $1,000 or more during a one-year period; and that (4) such use affected interstate or foreign commerce. *See* 18 U.S.C. § 1029(a)(2).

the offense . . . involved 10 or more victims." *See* U.S. Sent'g Guidelines Manual § 2B1.1(b)(2)(A)(i) (U.S. Sent'g Comm'n 2018). For cases like this one involving jointly undertaken criminal activity, the guidelines direct us to look at not only a defendant's conduct in isolation, but also the conduct of others that was "(i) within the scope of the jointly undertaken criminal activity; (ii) in furtherance of that criminal activity; and (iii) reasonably foreseeable in connection with that criminal activity." *See id.* § 1B1.3. Walker conceded that he personally harmed seven victims. The district court found that it was reasonably foreseeable to Walker that at least three more victims were harmed within the scope and in furtherance of the jointly undertaken criminal activity. We conclude that the district court did not clearly err in making this finding.

Walker never objected to paragraph 8 in the PSR, which indicated he agreed that the offense involved the personal identifying information of "at least 18 individuals." Doc. 192 at 6 ¶ 8. At oral argument, Walker asserted that even though he never objected to paragraph 8, while enumerating and objecting to other paragraphs in the PSR, he clearly evinced an intention to raise an overarching objection that he could not be held accountable for 10 or more victims. But Walker cited no authority that would relieve him from having to accurately identify the specific portions of the PSR to which he objected.

Even if we were to excuse Walker's failure to object, however, the district court's finding would still survive clear error review. Walker conceded before the district court and on appeal that

he personally defrauded seven victims. He stipulated to working as "one of the participants in the scheme" and that law enforcement obtained data showing "hundreds of fraudulent transactions" associated with the scheme. Doc. 144 at 2. Walker agreed that he was personally responsible for more than $28,000 in stolen cell phones, and he admitted to working with Acosta, the leader of the scheme, who was engaged in similar activity. Based on this record, the district court committed no clear error in finding that it was reasonably foreseeable to Walker that the joint criminal activity in which he participated involved at least 10 victims.

### C.    The District Court Did Not Err in Assigning Walker Two Criminal History Points for His Suspended Sentence.

Walker next argues that the district court erred in assigning him two criminal history points for the 140-day time-served credit he received for his suspended sentence. The Sentencing Guidelines require the addition of two criminal history points "for each prior sentence of imprisonment of at least sixty days." *See* U.S. Sent'g Guidelines Manual § 4A.1.1(b) (U.S. Sent'g Comm'n 2018). And "[i]f part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." *Id.* § 4A1.2(b)(2). The answer to the question before us turns on whether the district court erred in treating the 140-day time-served credit as a portion of Walker's suspended sentence that was not suspended.

We find no error in the district court's application of the Sentencing Guidelines on this question. The 140-day time-served credit does not exist in a vacuum; the state court credited those 140 days towards a 3.5-year term of imprisonment such that, had Walker ever triggered the suspended sentence of 3.5 years, his sentence would have been reduced by 140 days. We think it straightforward to say, then, that the 140 days Walker spent in jail were a "portion [of the suspended sentence] that was not suspended." *Id.*

Our reasoning is in line with the Fifth Circuit's in *United States v. Fernandez*, 743 F.3d 453 (5th Cir. 2014). There, the Fifth Circuit considered a similar situation, where a district court assigned the defendant, Fernandez, two criminal history points based on a suspended state-court sentence with a 254-day credit for time served. The *Fernandez* court reasoned that because the state court gave Fernandez credit for time served, it "explicitly took the period of pre-sentence confinement into account" in imposing the suspended sentence. *Id.* at 457 (internal quotation marks omitted). And because of that, the time-served credit had to be thought of as part of the suspended sentence itself for Sentencing Guidelines purposes. *See id.* at 456–57. We think the *Fernandez* court reached the correct result, and we find no error in the district court's assignment of two criminal history points for the same reasons.

Walker makes two arguments in response. First, he invokes the commentary to the Sentencing Guidelines to say that "criminal history points are based on the sentence pronounced, not the length of time actually served." *See* U.S. Sent'g Guidelines Manual

§ 4A1.2 cmt. 2 (U.S. Sent'g Comm'n 2018). Walker maintains that the 140 days he spent in jail were not part of a pronounced sentence, but rather, were days he spent *awaiting* sentencing. He adds that the decision to award time-served credit was not left to the discretion of the state-court judge but was mandated by Florida statute. In sum, Walker argues that because there was no punitive purpose to the 140 days he spent in jail when he served them, those days cannot be thought of as part of a criminal sentence.

We do not find Walker's first argument persuasive. Although criminal history points are, in the ordinary course, based on "the sentence pronounced" rather than time served, *id.*, the text of the guideline is clear that suspended sentences are an exception to this rule. For suspended sentences, we are to look to the time served, rather than the sentence pronounced. *Id.* § 4A1.2(b)(2); *see also United States v. Dixon*, 230 F.3d 109, 112 (4th Cir. 2000) (observing that, under the Sentencing Guidelines, "suspended sentences are counted by the time not suspended, rather than the time imposed").

Second, Walker argues that we should think of his suspended sentence not as a suspended sentence of imprisonment, but instead as a sentence of probation. He cites a provision in the Sentencing Guidelines commentary having to do with probation: "A sentence of probation is to [result in one criminal history point] unless a condition of probation requiring imprisonment of at least sixty days was imposed." U.S. Sent'g Guidelines Manual § 4A1.2 cmt. 2 (U.S. Sent'g Comm'n 2018). Walker offers no explanation at

all for why a suspended sentence of imprisonment is best thought of as a sentence of probation. Without any citations to authority or reasons from Walker on this point, we will not invent arguments on his behalf. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

We therefore conclude that the district court did not err in assigning Walker two criminal history points for his suspended sentence.[8]

## IV.    CONCLUSION

For the foregoing reasons, Walker's convictions and sentences are **AFFIRMED**.

---

[8] Walker asserts that the rule of lenity ought to apply in his favor. The rule of lenity is a rule of statutory interpretation, and it applies when the statute at issue is ambiguous. *See Romero v. Sec'y, U.S. Dep't of Homeland Sec.*, 20 F.4th 1374, 1383 (11th Cir. 2021). Because we find the Sentencing Guidelines unambiguous on this question, we do not reach the rule of lenity.