**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-14077

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

TOMAS ALKSNYS,
  a.k.a. John Himmer,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cr-20173-JB-1

————————————

Before ROSENBAUM, JILL PRYOR, and BRASHER, Circuit Judges.

PER CURIAM:

Appellant Tomas Alksnys pleaded guilty to one count of bank fraud and one count of money laundering. For these crimes,

he received a 36-month sentence. On appeal, Alksnys challenges his sentence. After careful consideration, we affirm.

## I.

This case arises from a fraudulent scheme involving the sale of vehicles on the internet. As part of the fraud, vehicles were advertised for sale on websites by Auto Haus, a Florida limited liability company. When a purchaser agreed to buy a vehicle, he was directed to wire money to Auto Haus's Bank of America account to complete the transaction.

Alksnys opened the Auto Haus bank account. He presented the bank with fraudulent documents that identified him as John Himmer. And Auto Haus's corporate documents identified John Himmer as one of its managers or members. Based on the information Alksnys provided, Bank of America opened an account for Auto Haus with Himmer as the sole authorized signatory for the account.

A few months later, three victims wired money to Auto Haus's Bank of America account. The first victim used the internet to arrange to purchase a classic car, a 1969 Chevrolet Camaro, and wired $24,000 to the Auto Haus bank account. The day after the wire was received, Alksnys went to two different Bank of America branches. At each branch, Alksnys identified himself as Himmer, provided fraudulent identification documents, and withdrew money. At one branch, he withdrew $10,000, and at the other he withdrew $14,000.

The second and third victims also arranged over the internet to purchase vehicles. A few days after the first victim wired money, the second victim agreed to purchase a luxury vehicle, a used Mercedez Benz G-class vehicle, and wired $63,729 to the Auto Haus bank account. On the same day, the third victim agreed to purchase a used recreational vehicle and wired $84,500 to the Auto Haus account. Two business days after the money was wired, Alksnys went to a Bank of America branch, identified himself as Himmer, presented fraudulent identification documents, and withdrew $38,000 from the Auto Haus account. None of the three victims ever received a vehicle.

About a year after the victims wired money to the Auto Haus account and Alksnys withdrew the money, a grand jury in the Southern District of Florida returned an indictment charging Alksnys with two counts of bank fraud in violation of 18 U.S.C. § 1344 (Counts One and Two) and two counts of money laundering in violation of 18 U.S.C. § 1957 (Counts Three and Four). Alksnys, a Lithuanian citizen, initially entered a plea of not guilty. When he appeared in court, he relied on the assistance of a Lithuanian interpreter.

Before trial, Alksnys signed a written plea agreement in which he agreed to plead guilty to one count of bank fraud and one count of money laundering in exchange for the government dropping the remaining charges. As part of the plea, he admitted that each victim attempted to purchase a vehicle over the internet, wired money to the Auto Haus bank account, and never received

a vehicle. He also agreed that he used the alias John Himmer to open the Bank of America account and provided the bank with fake identification documents. And he admitted returning to Bank of America branches, identifying himself as Himmer, presenting false identification documents, and withdrawing at least $62,000 from the Auto Haus account. In the plea agreement, Alksnys agreed to "waive[]" his right to appeal his sentence "unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing." Doc. 38 at 7.[1]

After Alksnys signed the plea agreement, the court held a change-of-plea hearing. At the hearing, a Lithuanian interpreter was present and translated for Alksnys.

At the start of the hearing, Alksnys's attorney told the court that he had not used an interpreter when meeting with Alksnys because it was "very difficult" to find a Lithuanian interpreter. Doc. 66 at 3. The attorney explained that Alksnys understood English "well," even though his spoken English was a "little bit choppy." *Id.* at 2. According to the attorney, when discussing the plea agreement, Alksnys at times needed him to "clarify" technical terms. *Id.* Although it had been a "long process" that required the attorney to "explain a lot," he believed that Alksnys had "a good understanding" of the plea. *Id.*

---

[1] "Doc." numbers refer to the district court's docket entries.

The court was concerned that Alksnys did not have an interpreter when reviewing the written plea agreement. The court stopped the hearing so that Alksnys could meet with his attorney and an interpreter to review the plea agreement and factual proffer.

After a 30-minute break, the court resumed the hearing. It noted that during the recess the interpreter fully translated the plea agreement and factual proffer for Alksnys. During the plea colloquy, the court reviewed the rights that Alksnys was waiving by pleading guilty, including his right to appeal. It explained that Alksnys was waiving his right to appeal his sentence unless the court sentenced him "above the advisory guideline range." *Id.* at 30. It continued that Alksnys could appeal if the court imposed an "upward adjustment or an upward variance." *Id.* The court repeated, "[s]o again, if I sentence you with an upward adjustment, yes, you can appeal." *Id.* After making these statements, the court asked Alksnys whether he understood the appeal waiver. He stated that he did. The court then asked Alksnys's attorney and the government if there were any issues with the description of the appeal waiver. They answered that there were no issues. The court found that Alksnys's waiver of his appellate rights was knowing and voluntary. The court accepted the guilty plea.

Before the sentencing hearing, a probation officer prepared a presentence investigation report ("PSR"). The PSR stated that the offense conduct involved opening the Auto Haus bank account and withdrawing money from the account. It also included as offense conduct the actions of other unindicted co-conspirators who listed

6                    Opinion of the Court                    24-14077

the vehicles for sale on the internet and communicated with the victims.[2]

The PSR then addressed the Sentencing Guidelines. It used the base offense level for a money laundering offense where the underlying offense was bank fraud. *See* U.S. Sent'g Guidelines § 2S1.1(a)(1). It applied several adjustments to the offense level, including one for committing the offense through mass marketing. After applying the adjustments, it calculated Alksnys's total offense level as 18.

The PSR also set forth Alksnys's criminal history. It reported that in November 2023, which was after Alksnys committed the instant offenses but before he was charged with them, he gave a law enforcement officer in Florida a fake Lithuanian identification card for John Himmer and a fake Lithuanian passport for Jerric Ulfred. Alksnys was placed under arrest. In a search after arrest, officers found that he was carrying three fraudulent debit cards. He admitted that he had purchased the fraudulent passport, identification, and debit cards. In the Florida state criminal case that followed, Alksnys was adjudicated guilty of a single charge—theft of a credit card—and received a sentence of 74 days with credit for

---

[2] The PSR, as initially prepared by the probation office, stated that Alksnys *and* his accomplices advertised the vehicles for sale on the internet and communicated with victims. Alksnys objected to this portion of the PSR because he had not participated in the advertising of the vehicles or communicating with victims. At the sentencing hearing, the court resolved the factual objection by modifying the PSR to state that Alksnys's co-conspirators (not Alksnys) advertised the vehicles and communicated with the victims.

time served. Because Alksnys was incarcerated for at least 60 days, the PSR assigned this sentence two criminal history points. *Id.* § 4A1.1(b). With two criminal history points, Alksnys was in criminal history category II.

Based on the total offense level and criminal history category, the PSR reported Alksnys's guidelines range as 30 to 37 months' imprisonment. And it stated that the applicable statutory maximum penalties were 30 years for the bank fraud offense and 10 years for the money laundering offense. It also noted that Alksnys was subject to a final order of removal.

Alksnys raised several objections to the PSR. First, he objected to the application of a two-level increase for mass marketing. He pointed out that he did not "post advertisements for the sale of vehicles on any website" or "negotiate the sale of any vehicle with any potential buyer." Doc. 49 at 3. He did not dispute that co-conspirators had engaged in such acts and thus used mass marketing. He nevertheless argued that he should not be held responsible for their actions because the actions were not within the scope of the jointly undertaken criminal activity and were not reasonably foreseeable to him.

He also objected because the PSR failed to apply a minor-role reduction. He argued that he played only a minor role in the scheme when he opened the Auto Haus bank account and later withdrew money from it. He pointed out that he kept only $17,000 of the proceeds for himself, which was 10% of the total amount

victims wired to the Auto Haus account, stating that others involved in the scheme had kept the rest of the proceeds.

Alksnys also challenged the PSR's determination that his Florida sentence scored two criminal history points. He argued that it should score no points because the sentence was for conduct that was "part of the instant offense." *Id.* at 4. He maintained that he possessed the fraudulent documents at issue in the Florida case solely for the purposes of "withdraw[ing] ill-gotten gains of the car sale scheme." *Id.* Alksnys further argued that if he scored zero criminal history points, the court should apply a two-level reduction in his offense level under § 4C1.1 because he was a zero-point offender.

The court overruled Alksnys's objections. As to the mass-marketing enhancement, it acknowledged that it was co-conspirators, not Alksnys, who used mass marketing to advertise vehicles on the internet. The court nevertheless concluded that the actions of the co-conspirators qualified as relevant conduct for which Alksnys could be held responsible at sentencing. Based on the unobjected-to facts in the PSR and the factual proffer in the plea agreement, the court explained that the fraudulent scheme included multiple transactions involving high-end vehicles and large amounts of money being wired to the Auto Haus bank account that Alksnys had used fraudulent documents to open. Given these facts, the court concluded that it was reasonably foreseeable to Alksnys that the fraudulent scheme involved mass marketing, as opposed to a fraud performed in some other way. Although the court

applied the mass-marketing enhancement, it acknowledged that the issue was "very close." *Id.* at 27.

The court also concluded that Alksnys was not entitled to a minor-role reduction. It stated that this issue was not "even close." *Id.* at 20. It found that Alksnys played an important role in the fraud because he presented fraudulent documents to the bank to open the Auto Haus account and found that his role was more than a "money mule" or "cash checker." *Id.* at 21.

The court further determined that Alksnys's sentence for the Florida conviction scored two criminal history points. It concluded that the sentence scored criminal history points because the conduct underlying the Florida conviction was insufficiently similar to Alksnys's conduct in this case. Because the court concluded that Alksnys had two criminal history points, he did not qualify for a reduction to his offense level as a zero-point offender.

After resolving the objections, the court adopted the PSR's guidelines calculations. Alksnys's attorney then requested a downward variance. He urged the court to consider the nature and circumstances of the offenses, which did not involve violence. The attorney described Alksnys as a "straw man" who served as a "pawn" for others and asserted that he received only a "minimal amount" of compensation for participating in the scheme. *Id.* at 28. The attorney also asked the court to consider Alksnys's personal history and circumstances, including that he had come from Lithuania to the United States to play rugby but his career did not pan

out. The attorney also stated that Alksnys's conduct was exemplary while he was detained.

The government opposed Alksnys's request for a variance and requested a sentence of 30 months, which was at the bottom of the applicable guidelines range. Although the offense was not violent, the government argued that the conduct was serious because the fraud had "essentially extracted life savings from at least three individuals." *Id.* at 30.

Alksnys addressed the court. He apologized for his conduct, took full responsibility for his actions, and promised that he would no longer participate in criminal activity.

The court imposed a 36-month sentence. It discussed Alksnys's conduct in the offense as well as his history and characteristics. It stated that Alksnys entered the United States on a visa waiver and "within months" was participating in a fraudulent scheme. *Id.* at 34. It determined that his participation was not "just a one-off event" because on multiple occasions he went to Bank of America branches and used fake identification. *Id.* at 35. The court also emphasized that Alksnys played an important role in the fraudulent scheme: he was trusted enough by the others to be the sole signatory on the Auto Haus bank account, which received more than $170,000 from the victims. Although Alksnys kept only $17,000 for his role in the scheme, the court observed that he was able to earn this money in a relatively short period of time, approximately 60 days. It ultimately concluded that Alksnys's conduct in the offense suggested "a level of sophistication that really belies the

defense's argument that he is a nice kid from Lithuania who is a rugby player who got hurt and, oh my God, these things happen." *Id.* at 35.

This is Alksnys's appeal.

## II.

Several standards of review govern this appeal. We review *de novo* the district court's interpretation of the guidelines and its application of the guidelines to the facts. *United States v. Moran*, 778 F.3d 942, 959 (11th Cir. 2015). But we review for clear error a district court's factual findings under the guidelines. *Id.* We review a district court's denial of a role adjustment for clear error. *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016). "Clear error review is deferential, and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." *Id.* (citation modified). A district court's "choice between two permissible views of the evidence as to the defendant's role in the offense will rarely constitute clear error so long as the basis of the trial court's decision is supported by the record and the court did not involve a misapplication of a rule of law." *Id.* (citation modified).

We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

### III.

Alksnys challenges his sentence on appeal.[3] He says that the district court erred in its application of aspects of the Sentencing Guidelines. He also argues that his sentence is substantively unreasonable. We begin with his challenges to the district court's application of the guidelines and then consider the substantive reasonableness of the sentence.

### A.

As to the Sentencing Guidelines, Alksnys argues that the district court erred at sentencing when it (1) applied a two-level mass-marketing enhancement, (2) denied his request for a two-level minor role reduction, and (3) concluded that his Florida sentence arising out of his conviction for theft of a credit card scored two criminal history points. We have carefully reviewed each issue, and we see no error.

### 1.

We begin with Alksnys's challenge to the mass marketing enhancement. Under the Sentencing Guidelines, a defendant receives a two-level increase to his offense level if the "offense . . . was committed through mass-marketing." U.S.S.G.

---

[3] The government moved to dismiss this appeal as barred by the appeal waiver in the plea agreement. Alksnys opposed the motion to dismiss, arguing that he had not knowingly and voluntarily waived his right to appeal. We previously carried the government's motion with the case. Because we conclude that none of Alksnys's arguments on appeal have merit, we deny the government's motion to dismiss as moot.

§ 2B1.1(b)(2)(A)(ii). No one disputes that the conduct of Alksnys's unindicted co-conspirators, which involved advertising vehicles for sale through the internet, involved mass marketing.

The question here is whether the district court erred in holding Alksnys responsible for the conduct of his co-conspirators. We have previously explained that when deciding whether an offense was committed through mass marketing, a court may consider "all relevant conduct under § 1B1.3." *Moran*, 778 F.3d at 975. Under § 1B1.3, a defendant, of course, may be held accountable for acts that he "committed." U.S.S.G. § 1B1.3(a)(1)(A). In addition, "in the case of jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," he may be held accountable for the acts of others that were (1) "within the scope of the jointly undertaken criminal activity," (2) "in furtherance of that criminal activity," and (3) "reasonably foreseeable in connection with that criminal activity." *Id.* § 1B1.3(a)(1)(B).

Before a district court may hold a defendant liable for the conduct of others, it must "make individualized findings concerning the scope of criminal activity undertaken by a particular defendant." *United States v. Barry*, 163 F.4th 1346, 1350 (11th Cir. 2026) (citation modified). A court must make these findings "because the scope of the defendant's jointly undertaken activity is not necessarily the same as the scope of the entire conspiracy." *Id.* But even when a district court fails to make the required individualized findings, we may affirm a sentence when "the record supports the

court's determination with respect to the offense conduct, including the imputation of others' unlawful acts to the defendant." *Id.* (citation modified).

Here, the district court applied the mass marketing enhancement based on the conduct of Alksnys's co-conspirators. Yet the court failed to make findings about the scope of Alksnys's jointly undertaken criminal activity. We nevertheless affirm because the record supports the district court's decision to impute the co-conspirators' unlawful activities using mass marketing to advertise the vehicles to Alksnys.

The record in this case shows that the criminal activity Alksnys agreed to undertake jointly included fraudulently selling automobiles. He argues that there was no direct evidence that he was aware that his co-conspirators were defrauding victims by falsely promising to sell them vehicles and then stealing their money. So, he never agreed to jointly undertake these activities. But the record contains circumstantial evidence supporting an inference that Alksnys knew that his co-conspirators were engaged in the fraudulent sale of vehicles and agreed to undertake it together. Importantly, he was the one who opened a bank account for Auto Haus using fraudulent identification documents for John Himmer. This evidence supports an inference that he was aware that the company, which he knew from its name was engaged in business related to automobiles, was engaged in fraud. He also was aware that, over a period of approximately one week, Auto Haus's bank account re-

ceived three separate wire transfers from three different individuals, each wire in an amount roughly equal to the price of a vehicle. And when the wires reached the Auto Haus account, Alksnys quickly withdrew large amounts of cash from the account. Taken together, this evidence supports an inference that he knew that his co-conspirators were engaged in fraudulent sales of vehicles and agreed to jointly engage in this criminal activity. This evidence also supports an inference that it was reasonably foreseeable that the fraudulent automobile sales would involve the use of the internet and mass marketing.

On appeal, Alksnys also argues that the evidence in the record was inadequate to support the mass-marketing enhancement. He says that because he objected, the government was required to introduce evidence to establish that the enhancement applied, and it failed to do so. It is true that when "the government seeks to apply an enhancement under the Sentencing Guidelines over a defendant's factual objection, it has the burden of introducing sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence." *United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013) (citation modified). But the government may satisfy its burden using facts the defendant admitted in the factual proffer of the plea agreement, as well as unobjected-to factual assertions in the PSR. *See United States v. Thomas*, 32 F.4th 1073, 1077 (11th Cir. 2022); *United States v. Baldwin*, 774 F.3d 711, 734–35 (11th Cir. 2014). Here, the factual proffer in Alksnys's plea agree-

ment and the unobjected-to facts in the PSR supported the enhancement. We thus cannot say that the district court erred in applying the mass-marketing enhancement.

**2.**

Next, we consider whether the district court erred in denying Alksnys's request for a minor-role reduction. The Sentencing Guidelines provide that a defendant is entitled to a two-level decrease in his offense level if he was a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b). A "minor participant" is someone "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* § 3B1.2 cmt. n.5. The decision whether to apply a minor-role adjustment is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *Id.* § 3B1.2 cmt. n.3(C).[4]

We have instructed district courts that when deciding whether to apply a minor-role adjustment, to consider "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared

---

[4] We acknowledge that a court is required to defer to the Sentencing Commission's commentary to the Sentencing Guidelines only when the relevant guideline is ambiguous. *See United States v. Dupree*, 57 F.4th 1269, 1275–78 (11th Cir. 2023) (en banc). Neither party here contests the application of the commentary to § 3B1.2 or argues that it is inconsistent with the guideline's text. Instead, on appeal, both parties cite and rely upon it. And so we consider it as well. *See United States v. Jews*, 74 F.4th 1325, 1327 n.2, 1329 n.5 (11th Cir. 2023) (considering guidelines commentary in a similar situation).

to that of other participants in [the] relevant conduct." *United States v. Rodriguez De Varon*, 175 F.3d 930, 940 (11th Cir. 1999). "These principles advance both the directives of the Guidelines and our case precedent by recognizing the fact-intensive nature of this inquiry and by maximizing the discretion of the trial court in determining the defendant's role in the offense." *Id.* at 934.

Here, Alksnys argues that the district court erred in denying his request for a minor-role reduction because a review of the "totality of the circumstances" shows that "his role was limited." Appellant's Br. 23. The district court accepted that Alksnys did not advertise the vehicles on the internet or communicate with the victims. Still, for all three vehicles, he played a critical role in the fraudulent scheme. He went in person to the Bank of America branch and presented fraudulent documents so that the bank would open the Auto Haus account. Then, after the victims wired money to the account, he returned to bank branches multiple times. Each time, he presented fraudulent identification documents and withdrew large amounts of money. On this record, we are not left with a definite and firm conviction that the district court committed a mistake in denying the minor-role reduction. *See Cruickshank*, 837 F.3d at 1192.

**3.**

We now consider whether the district court erred when it assigned Alksnys two criminal history points for his Florida conviction. In arriving at a defendant's criminal history, a court adds two criminal history points "for each prior sentence of imprisonment of

at least sixty days" but not exceeding one year and one month. U.S.S.G. § 4A1.1(b). Under the guidelines, a "prior sentence" refers to any sentence "previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." *Id.* § 4A1.2(a)(1). Commentary to the Sentencing Guidelines explains that conduct is part of the instant offense if it is "relevant conduct to the instant offense under the provisions of § 1B1.3." *Id.* § 4A1.2, cmt. n.1.[5]

We conclude that the district court did not err in assigning Alksnys's Florida sentence two criminal history points. He argues that the sentence should score no points because the conduct underlying his Florida conviction included providing law enforcement with the same fraudulent Himmer identification that he used when committing the offenses in this case. But the conduct giving rise to the Florida conviction occurred months after he completed the offenses in this case. With this gap in time, we are not persuaded that the Florida conviction was for conduct relevant to the offenses in this case.

Relatedly, Alksnys argues that the district court erred in denying his request for a two-level reduction under § 4C1.1. Under this provision, a defendant who "did not receive any criminal history points" and meets certain other criteria is eligible to receive a two-level reduction to his offense level. *Id.* § 4C1.1(a). Because the

---

[5] Neither party challenges the application of the commentary to § 4A1.2 or argues that it is inconsistent with the guideline's text. Instead, on appeal, both cite and rely upon it. We likewise consider it. *See Jews*, 74 F.4th at 1329 n.5.

district court properly concluded that Alksnys had two criminal history points, it did not err by denying him a two-level reduction to his offense level under § 4C1.1.

### B.

Lastly, we consider Alksnys's challenge to the substantive reasonableness of his sentence. When reviewing the substantive reasonableness of a sentence, we consider the totality of the circumstances. *Gall*, 552 U.S. at 51. We will vacate a sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (citation modified). Importantly, "the weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016). The party challenging the sentence bears the burden of showing that it is substantively unreasonable. *United States v. Boone*, 97 F.4th 1331, 1338–39 (11th Cir. 2024).

The district court did not abuse its discretion when it denied Alksnys's request for a downward variance and instead imposed a 36-month sentence. At sentencing, the court considered the relevant § 3553(a) factors, including the nature and circumstances of the offense. Although there is no presumption of reasonableness, the sentence was well below the statutory maximum and within

the applicable guidelines range, which further supports a conclusion that the sentence was reasonable. *See United States v. Woodson*, 30 F.4th 1295, 1308 (11th Cir. 2022) ("We ordinarily expect that a sentence falling within the guideline range will be reasonable, and a sentence imposed well below the statutory maximum penalty indicates reasonableness." (citation modified)).

Alksnys argues that the district court should have given greater weight to a different § 3553(a) factor—his personal history—that he says supported a shorter sentence. Even if the evidence of his personal circumstances supported a shorter sentence, it was up to the district court to decide how much weight to give each factor. *See Croteau*, 819 F.3d at 1310.

Alksnys also asserts that the district court should have imposed a shorter sentence to account for the fact that his co-conspirators had not been indicted and thus received no criminal sentence. But the relevant § 3553(a) factor directs a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records *who have been found guilty of similar conduct*." 18 U.S.C. § 3553(a)(6) (emphasis added). So, the fact that Alksnys's co-conspirators, who have not been found guilty of any crime, have received no sentences does not create an unwarranted disparity under § 3553(a)(6). After considering the record, we conclude that district court did not abuse its considerable discretion in imposing a 36-month sentence in this case.

## IV.

For the above reasons, we affirm the judgment of the district court. We DENY as moot the government's motion to dismiss the appeal. We also DENY as moot Alksnys's motion to expedite the appeal.

**AFFIRMED.**